UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

SAMMY L. TRIMMIER, JR.,          :
     Plaintiff,                :
                              :
     v.                       :     Case No. 3:20cv396(KAD)
                              :
ROLAND COOK, ET AL.,           :
     Defendants.           :

**<u>INITIAL REVIEW ORDER</u>**

Kari A. Dooley, United States District Judge

      Plaintiff, Sammy Trimmier ("Trimmier"), currently incarcerated at the Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut ("Corrigan-Radgowski"), brings this civil rights complaint against Commissioner Roland Cook, Security Risk Group ("SRG") Program Director John Papoosha, Lieutenant John Randolph, Security Division Director Antonio Santiago[1] and Warden R. Martin.[2]  Trimmier challenges his placement in DOC's Security Risk Group ("SRG") Program on two separate occasions.  For the reasons set forth below, the amended complaint is dismissed in part.

**Standard of Review**

      Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

---

[1]  Although Trimmier does not identify the position held by Antonio Santiago within the Department of Correction ("DOC"), the DOC website reflects that Antonio Santiago is the current Director of the Security Division and was promoted to that position in April 2018.  *See* https://portal.ct.gov/DOC/Org/Security-Division and https://portal.ct.gov/-/media/DOC/Pdf/Pride/PRIDE20180411.pdf?la=en.

[2]  Trimmier does not indicate at which prison facility Warden Martin is employed.  The DOC website reflects that Warden Robert Martin transferred from Bridgeport Correctional Center to Corrigan-Radgowski at some point in 2020.  *See* https://portal.ct.gov/DOC/Facility/Corrigan-Radgowski-CC - under List of past wardens at Corrigan-Radgowski and https://portal.ct.gov/DOC/Facility/Bridgeport-CC under List of past wardens at Bridgeport Correctional Center.

relief from a defendant who is immune from such relief." *Id.*  In undertaking this review, the Court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard.  *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).[3]

**Factual Allegations**

In August 2018, thirty days after his admission to Hartford Correctional Center as a pretrial detainee, Lieutenant Randolph issued Trimmier ticket charging him with having received a photograph in the mail and having posted a video on YouTube that suggested that he was

---

[3]   The Court limits its review for purposes of 28 U.S.C. § 1915A, to federal law claims.  That is because the core purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.  On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment.  More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A, that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

affiliated with an SRG.  *See* Am. Compl., ECF No. 15, at 2 ¶ 1, 3; Compl., ECF No. 1, at 3.  A prison official escorted Trimmier to the restrictive housing unit pending an investigation into the conduct which formed the basis of the issuance of the disciplinary.  *Id.* ¶ 1.

Trimmier repeatedly informed the investigator that he was no longer associated with any gang. *Id.* ¶ 5.  An SRG Intelligence Officer informed Trimmier that he would receive the maximum sanctions, 90 days loss of telephone privileges, 90 days loss of commissary privileges and 90 days loss of mail, recreation or visitation privileges, if he chose to fight the ticket.  *Id.* ¶ 2. During his confinement in the restrictive housing unit, Trimmier was not permitted to make any telephone calls or receive visitors, was rarely permitted to recreate outside because of weather conditions, and remained in his cell for twenty-three hours a day.  *Id.* ¶¶ 2, 8.

Trimmier chose to plead guilty to the ticket rather than risk the imposition of maximum sanctions.  *Id.* at 3 ¶ 9.  He received sanctions of thirty days loss of commissary and thirty days loss of recreation.  *Id.* ¶ 10.  As a result of his plea of guilty to the disciplinary ticket, an official transferred Trimmier to Corrigan-Radgowski to complete phase 3 of the SRG program.  *Id.* ¶¶ 9-10.

During his confinement at Corrigan-Radgowski, Trimmier endured the following conditions: an inability to earn good-time credit; ineligibility for parole, transitional supervision, or other re-entry programs; limitations on commissary spending; visits only from immediate family; three telephone calls per day; no access to a law library; no vocational or educational classes or rehabilitative programming; insufficient mental health staff assigned to his housing unit; no brush to clean the toilet**;** and no social contact between inmates through cell doors.  *Id.* at 3-4 ¶¶ 13-16, 22-28.

At some point, Trimmier was involved in a fight with another inmate, "revolving around gang activities," during which he suffered injuries. *Id.* at 3 ¶ 17. The isolating conditions exacerbated his post-traumatic stress disorder and his depression. *Id.* at 3-4 ¶ 18, 29. Commissioner Cook and SRG Program Director Papoosha were fully aware of the harsh conditions to which he was exposed during his confinement in phase 3 of the SRG program. *Id.* at 4 ¶¶ 20-21.

On August 30, 2019, upon his readmission to Hartford Correctional Center as a pretrial detainee,[4] prison officials escorted Trimmier to a cell in the restrictive housing unit pending his transfer to the SRG program. *Id.* at 5 ¶¶ 31-32. Trimmier did not receive a ticket charging him with SRG affiliation or a "proper" 90-day review of his SRG status prior to his placement in the SRG Program. *Id.* ¶ 32. He has endured limited recreational opportunities, telephone calls and commissary privileges and emotional distress. *Id.* ¶ 33. Trimmier has repeatedly informed prison officials that he is not an active member of a gang. *Id.* at 6 ¶ 38.

**Discussion**

Trimmier contends generally that the defendants violated his First and/or Fourteenth Amendment rights when he was placed in phase 3 of the SRG program in 2018 and when he was placed in phases 2 and 3 upon his readmission to DOC on August 30, 2019. Trimmier seeks monetary damages, a declaration that the defendants violated his federal constitutional rights and an injunction directing defendants Santiago, Cook, Papoosha and Martin to remove him from the SRG Program and to transfer him to general population.

**Eleventh Amendment**

---

[4] Connecticut's DOC website reflects Trimmier's latest admission date as August 30, 2019 and that he was sentenced on August 10, 2020. *See* http://portal.ct.gov/DOC (last visited August 17, 2020). This information

4

Trimmer does not indicate the capacity or capacities in which he sues the defendants.  To the extent that he seeks monetary relief from the defendants in their official capacities, the request is barred by the Eleventh Amendment.  *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).  Accordingly, the requests for compensatory and punitive damages from the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

Nor is Trimmier entitled to the declaratory relief he seeks. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may seek only prospective injunctive and declaratory relief to address an ongoing or continuing violation of federal law or a threat of a violation of federal law in the future.  *See In re Deposit Ins. Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  Accordingly, Trimmier's request for a declaration that the defendants violated his federal constitutional rights in the past is also barred by the Eleventh Amendment.  *See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*... to claims for retrospective relief") (citations omitted).  Furthermore, if Trimmier were to prevail on either of his constitutional claims, the Court necessarily would have determined that the defendants violated his constitutional rights.  Thus, a separate award of declaratory relief is unnecessary.  Accordingly, the request for declaratory relief is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

---

may be accessed using Trimmier's CT DOC Inmate Number - 425900.

**Fourteenth Amendment – Admission to DOC in 2018**

As a preliminary matter, it does not appear that Trimmier is raising a procedural due process claim arising out of his transfer to Corrigan-Radgowski and placement in the SRG program following his plea of guilty to the disciplinary charge for SRG affiliation in 2018. However, even if such was his intent, because he pled guilty to the SRG disciplinary charge, Trimmier cannot state a plausible 14th Amendment procedural due process claim arising out of those events. *See e.g.*, *Coleman v. Sutton*, 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (noting that plaintiff's plea of "guilty to the charged [sic] in the misbehavior report filed against him by Nurse Welburn ... defeats any claim based on the issuance of the report") (citing *Reid v. Doe*, No. 95-CV-1144, 1997 WL 216226, at *5 (N.D.N.Y. Apr. 15, 1997) (stating that since inmate plaintiff pleaded guilty to harassment charge in misbehavior report, there could be no constitutional violation arising out of issuance of report, even if report was motivated in part by retaliation).[5] Rather, he claims that his substantive due process rights were violated first due to the punitive nature of the conditions he endured, and second, because the conditions, even if not deemed punitive demonstrate deliberate indifference by the defendants to his health and safety.

**Substantive Due Process - Punishment**

Trimmier first contends that Commissioner Cook, SRG Program Director Papoosha, Lieutenant Randolph and Warden Martin subjected him to punishment by requiring him to endure restrictive conditions during his confinement in phase 3 of the SRG program at Corrigan-Radgowski in 2018.

_____

[5] In any event, Trimmier does not name the intelligence or investigating officer who allegedly persuaded him to plead guilty to the disciplinary charge rather than proceeding to a hearing, or the prison official who ordered

In *Bell v. Wolfish,* 441 U.S. 520 (1979), the Supreme Court held that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535. And therefore further held that the "proper inquiry" into whether pretrial conditions of confinement implicate due process is "whether those conditions amount to punishment of the detainee." *Id.* However, "[n]ot every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* at 537. In evaluating whether a restrictive status or condition imposed on a pretrial detainee violates the detainee's substantive due process rights, "[a] court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id.* at 538.  To determine punitive intent in the absence of an allegation that the defendant clearly expressed an intent to punish a detainee, a court may consider "'whether an alternative purpose to which [the condition] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69 (1963)).  Thus, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  *Id.* at 539.  If, however, a restriction or condition is "arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees."  *Id.*  Valid governmental objectives that could justify the imposition of restrictive conditions of confinement on pretrial detainees include "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees," "ensuring a detainee's presence at trial," and "manag[ing] the facility in which the individual is

his transfer to and placement in the SRG program pursuant to the guilty finding, as defendants.

detained." *Id.* at 540.

Here, Trimmier contends that during his confinement at Corrigan-Radgowski in phase three of the SRG Program in 2018, he was subjected to the following restrictive and punitive conditions: an inability to earn good-time credit; ineligibility for parole, transitional supervision, or other re-entry programs; limitations on commissary spending, visits only from immediate family; three telephone calls per day; no access to a law library; no vocational or educational classes or rehabilitative programming; insufficient mental health staff assigned to his housing unit; no brush to clean toilet; and no social contact between inmates through cell doors.  Am. Compl. at 3-5 ¶¶ 13-16, 22-28.

He claims that his placement in the SRG program in 2018 as a pretrial detainee was punitive with its harsh and restrictive features because he poses no threat to the safety or security of the facility and he has never even violated a rule in the DOC. Trimmier acknowledges however that he received disciplinary sanctions based on his guilty plea which would suggest that his placement in the SRG program in 2018 was due to safety and security concerns in light of his affiliation with an SRG.  *See, e.g.*, *Myers v. Semple*, No. 3:18-CV-505, 2018 WL 3553336, at *5 (D. Conn. July 23, 2018) ("Correctional officials have a legitimate penological reason to control SRG activity within correctional facilities.") (collecting cases).  At this stage, the Court cannot discern whether the restrictive conditions imposed on Trimmer pursuant to his placement in phase three of the SRG Program were reasonably related to a safety or security concern of DOC or were arbitrary and therefore punitive.  *See Benjamin v. Fraser,* 264 F.3d 175, 183, 188 (2d Cir.2001) (noting that an administrative confinement status, although characterized as non-punitive or as having been imposed due to safety/security concerns, may involve punishment).

8

The Fourteenth Amendment claim that Trimmier's placement in the SRG Program in 2018 was punitive shall proceed against all defendants.

### Substantive Due Process – Conditions of Confinement

In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit held that a pretrial detainee may not only state a Fourteenth Amendment due process claim by asserting facts to demonstrate the punitive nature of prison conditions under the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), but may also state a claim of unconstitutional conditions of confinement by asserting facts to demonstrate that prison officials were deliberately indifferent to his or her basic human needs or a risk of serious harm to his or her health or safety. *Id.* at 34 n.12 (citations omitted). There are two prongs to the *Darnell* standard governing a conditions of confinement claim under the Fourteenth Amendment. 849 F.3d at 29. Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk or serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

The second prong, also called "the *mens rea* prong, of [the] deliberate indifference [standard] is defined objectively." *Id.* at 35. To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally

9

to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.*

The conditions that Trimmier claims to have been exposed to during his confinement in the SRG program as of August 2018, - limited daily telephone calls and recreation, restrictions on commissary spending to $40.00 a day, visits only with family members, lack of access to a law library and a toilet brush and ineligibility for good time credit, parole release, halfway house placement, transitional supervision and vocational or educational programs-- do not constitute deprivations of Trimmier's basic human needs, such as food, clothing, shelter, medical care or safety. The Court concludes that Trimmier has not plausibly alleged facts to meet the first prong of the Fourteenth Amendment conditions of confinement standard based upon these allegations and this claim is dismissed. *See* 28 U.S.C. §1915A(b)(1); *See, also, Doyle v. Santiago*, No. 3:19-CV-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (considering conditions in phases two and three of Connecticut's SRG Program and concluding that "[a]lthough the conditions described may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional").

Trimmier also alleges that he suffered from serious mental health conditions, including post-traumatic stress disorder and depression, and that the lack of social contact with other detainees or inmates and the lack of access to a treatment provider, exacerbated his mental health conditions. Construed liberally, these allegations are sufficient to state a claim that the isolating conditions of confinement and limited access to mental health treatment in the SRG program posed a risk of serious harm to his mental health. Trimmier has met the objective prong of the

*Darnell* standard.

As to the *mens rea* prong, Trimmier asserts that Commissioner Cook, Director Santiago, Warden Martin, Lieutenant Randolph and SRG Program Director Papoosha were aware of these conditions and intentionally or recklessly failed to act to mitigate an excessive or substantial risk to his mental health.  Again, liberally construed, this allegation meets the subjective prong of the *Darnell* standard.  The Fourteenth Amendment substantive due process claim that the defendants were deliberate indifferent to the Plaintiff's mental health needs during his confinement in the SRG Program in 2018 will proceed against all defendants in their individual capacities and against SRG Program Director Papoosha, Commissioner Cook, Director Santiago and Warden Martin in their official capacities.[6]

### Fourteenth Amendment - Readmission to DOC in 2019

Trimmier brings both procedural and substantive due process claims arising out of his designation to the SRG Program upon his readmission to the DOC in 2019.

### Substantive Due Process

### Punishment

Trimmier alleges that his placement in the SRG program in August 2019 as a pretrial detainee based on his prior designation as an SRG member in 2018 was punitive because it was arbitrary and not based on current legitimate safety or security concerns and that the conditions

---

[6] Trimmier also alleges that at some point during confinement in the SRG program, he was involved in a fight "revolving around gang activities" and that he suffered physical injuries.  He does not mention the nature of his injuries or the circumstances giving rise to his involvement in the altercation.  There are no allegations that Trimmier informed any defendant that his safety or health was in danger or that any defendant knew or should have known of or recklessly disregarded any threats to his safety or health by other inmates in the SRG program.  The Court concludes that Trimmier's conclusory allegations regarding his involvement in a fight stemming from gang activities and that he suffered unspecified injuries do not state a plausible claim that any defendant recklessly failed to act with reasonable care to protect him from an excessive risk of harm to his health or safety that was known or should have been known.  Thus to the extent a Fourteenth Amendment deliberate indifference to safety claim was

in the program were punitive because they were overly restrictive and harsh.  As discussed above, at this stage, the Court cannot determine whether the subsequent decision to place Trimmer in the SRG Program in August 2019 was based on a valid governmental objective or was punitive.  Nor can the Court discern whether the restrictive conditions imposed on Trimmier pursuant to his placement in the SRG Program in 2019 were reasonably related to a safety or security concern of DOC or were arbitrary and punitive.

Accordingly, the Court will permit this substantive due process claim to proceed against all defendants in their individual capacities and against SRG Program Director Papoosha, Commissioner Cook, Warden Martin and Director Santiago in their official capacities for further development of the record.  *See Scozzari*, 2019 WL 1921858, at *5 (permitting allegations of substantive due process violations pertaining to restrictive conditions of confinement imposed on detainee assigned to SRG Program to proceed because it was not completely clear on initial review how, "for instance, constraining the number of calls [detainee] may make, limiting his commissary budget relative to the general population, or failing to provide programming are reasonably related to the possibility he may have been a gang member").

**Conditions of Confinement**

After his readmission to DOC in 2019, Trimmier alleges that the defendants subjected him to limitations on telephone use, commissary spending and recreational opportunities.  *Id.* ¶ 33.  These deprivations do not implicate basic human needs, such as food, clothing, shelter, medical care or safety. *See, e.g. Doyle v. Santiago, supra.,* at *8. Nor does Trimmier allege that his readmission in 2019 impacted his physical or mental health in any fashion.  Accordingly, Trimmier has not satisfied the first prong of the *Darnell* standard for stating a Fourteenth

intended, it is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).  12

Amendment conditions of confinement claim and that claim is dismissed.

**Procedural Due Process**

Trimmier challenges his designation as an SRG member and placement in the SRG program upon his readmission to the Hartford Correctional Center in August 2019 on the ground that he did not receive a disciplinary report or a notice of the SRG affiliation charge or an opportunity to be heard regarding that charge at a hearing. Nor did he receive a 90 day review of his redesignation as an SRG member and placement in the SRG program.

To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege that the "[d]efendants deprived him of a cognizable interest in life, liberty, or property. . . without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks and citations omitted). The nature of the restrictive confinement dictates the type of process that is due. *See Benjamin v. Fraser*, 264 F.3d 175, 190 (2d Cir. 2001).

In *Hewitt v. Helms*, 459 U.S. 460 (1987), the Supreme Court considered what process should be afforded an inmate who had been placed in administrative segregation pending an investigation into a disciplinary charge. *Id.* at 474. The Court explained that it was appropriate to place an inmate in administrative segregation "when necessary to incapacitate an inmate who "represents a security threat" or to "complet[e] ... an investigation into misconduct charges." *Id.* at 476. The Court held that in connection with an inmate's placement on administrative segregation, he or she "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476. In *Wilkinson v.*

13

*Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

In *Wolff v. McDonnel*, 418 U.S. 539, 566 (1973), the Supreme Court held that an inmate charged with a disciplinary violation that may result in the loss of good-time credits is entitled to written notice of the charges at least twenty-four hours in advance of the hearing, the opportunity to present witnesses and documentary evidence before an impartial hearing officer or committee as long as doing so will not jeopardize prison safety and security, and a written statement including evidence relied on by the hearing officer in reaching his or her decision and the reasons for the disciplinary action. *Id.* at 564-66. An inmate has no right to retained or appointed counsel at a disciplinary hearing, but in some circumstances may be entitled to the appointment of an advocate or assistance from a fellow inmate. *Id.* at 570. The finding of guilt as to the disciplinary charge must be based on some "reliable evidence." *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (internal quotation marks and citations omitted).

The Court cannot discern whether Trimmier's redesignation or his placement in the SRG program in August 2019 was disciplinary or administrative. Because Trimmier has alleged that he received no notice or hearing or other form of process prior to his redesignation as an SRG member and placement back in the SRG program, Trimmier has stated a plausible procedural due process claim under either the *Hewitt* or *Wolff* standards. Although Trimmier's allegations are not entirely clear with regard to which defendants may have been involved in his redesignation and placement in the SRG program in August 2019, the Court liberally construes the procedural due process claim to be asserted against Lieutenant Randolph, SRG Program

14

Director Papoosha and Director Santiago.  Warden Martin was not employed at Hartford Correctional Center at the time of Trimmier's readmission and there are no allegations regarding Commissioner Cook's awareness of or involvement in the decisions to redesignate Trimmier and place him in the SRG program at that time.  Accordingly, the procedural due process claims related to Trimmier's August 2019 redesignation as an SRG member and placement in the SRG program will proceed against Lieutenant Randolph, SRG Program Director Papoosha and Director Santiago in their individual capacities and against SRG Program Director Papoosha and Director Santiago in their official capacities.

### First Amendment Claim

Trimmier states that Director Santiago and SRG Program Director Papoosha work in the central office of DOC and that they created the policy permitting Lieutenant Randolph to use statements or videos that he had posted on his social media page or on YouTube prior to his confinement within DOC in 2018 to issue him a disciplinary ticket charging him with SRG affiliation in August 2018 and to automatically designate him as an SRG member and to place him in the SRG program upon his readmission to Hartford Correctional Center in August 2019. Trimmier contends that this policy and the actions of Lieutenant Randolph in enforcing the policy violated his First Amendment rights.  The Court construes this allegation as a claim that these Director Santiago, SRG Program Director Papoosha and Lieutenant Randolph retaliated against Trimmier for exercising his First Amendment right to free speech.

The Second Circuit has observed that district courts should treat retaliation claims asserted by prisoners with "'skepticism and particular care[] because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a

constitutional violation-can be characterized as a constitutionally proscribed retaliatory act.'"
*Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (quoting *Davis v. Goord*, 320 F.3d 346, 352
(2d Cir. 2003).  Thus, a prisoner must support his or her retaliation claim with "specific and
detailed factual allegations" and not mere conclusory statements.  *Id.* (internal quotation marks
and citation omitted).  To state a cognizable First Amendment retaliation claim, a prisoner must
allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse
action against the plaintiff, and (3) that there was a causal connection between the protected
speech and the adverse action."  *Id.* at 294 (internal quotation marks and citation omitted).

The Supreme Court has recognized a First Amendment interest in posting on social
media.  *See Packingham v. North Carolina*, ––– U.S. ––––, 137 S. Ct. 1730, 1737 (2017) ("by
prohibiting [offenders] from using [social media] websites, North Carolina with one broad stroke
bars access to what for many are the principal sources for ... speaking and listening in the modern
public square.... They allow a person with an Internet connection to 'become a town crier with a
voice that resonates farther than it could from any soapbox.' In sum, to foreclose access to social
media altogether is to prevent the user from engaging in the legitimate exercise of First
Amendment rights.") (citing *Reno v. ACLU*, 521 U.S. 844, 870 (1997)).  Thus, Trimmier alleges
that his social media post was protected speech for purposes of the first element of this claim.

As to the second element, that the plaintiff suffered an adverse action due to the conduct
of defendants, the Second Circuit has held that "only retaliatory conduct that would deter a
similarly situated individual of ordinary firmness from exercising his or her constitutional rights
constitutes an adverse action."  *Wrobel v. County of Erie*, 692 F.3d 22, 31 (2d Cir. 2012).
"Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of

16

constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d. Cir. 2001). Whether an action is considered adverse depends on the circumstances in each case. *Id.* (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse." (internal quotation marks and citation omitted)).

Trimmier alleges that the conditions of confinement in the SRG Program were significantly harsher and more restrictive than those in the general population units. Trimmier has plausibly alleged that his designation to the SRG Program constituted adverse action.

With regard to the causal connection element, Trimmier alleges that his designation to the SRG Program in both 2018 and 2019 were based in part on a video that he posted on social media prior to his admission to DOC in August 2018.  He alleges that in August 2018, Lieutenant Randolph determined that the activities depicted in the YouTube video posted by Trimmier prior to his confinement at Hartford Correctional Center and a photograph mailed to or from Trimmier during his confinement at Hartford Correctional Center in August 2018 to be gang-related and therefore indicative of gang membership and issued him a disciplinary ticket for SRG affiliation and in August 2019 upon his readmission to DOC, Lieutenant Randolph redesignated Trimmier as an SRG member based on the same gang-related activities depicted in the video and photograph.

This Court has recently held that neither allegations of this nature nor this characterization of the defendants' conduct are enough to establish a causal connection between

the adverse action and the protected speech. *See, Caves v. Payne,* 2020 WL 1676916 *4 (D. Conn. April 6, 2020). Indeed, Trimmier's designation was not made to punish him for posting on social media or to deter him from doing so in the future.  Rather the social media post was merely the evidence used to support the issuance of the disciplinary report for SRG affiliation in 2018 and his redesignation as an SRG member in 2019.  The use of the social media post is no different than if Trimmier announced upon his arrival at the facility that he was a gang member and the defendants used such a statement to designate him to the SRG Program. *Id. See also, Wilson v. Santiago*, 2020 WL 1989135, at *2 (D. Conn. April 27, 2020); *Martinez v. Payne*, No. 3:20-CV-00231 (JAM), 2020 WL 3630422, at *4 (D. Conn. July 4, 2020).

"The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."  *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *see United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015) (admission of rap lyrics and tattoo images in gang trial does not violate First Amendment; "This challenge is meritless ... because here the speech is not itself the proscribed conduct. The speech was not the basis for the prosecution, but instead it was used to establish the existence of, and [the defendant's] participation in, the alleged RICO enterprise.") (internal quotation marks and citation omitted). Indeed, social media posts and other speech are oft considered indicative of gang membership in criminal cases. *See, e.g., United States v. Garnes*, No. 14-20119, 2015 WL 3574845, at *2 n.1 (E.D. Mich. June 5, 2015) (rejecting First Amendment challenge because rap lyrics relevant to issue of membership in gang); *United States v. Mobley*, No. 1:13-CR-218-CAP-LTW, 2015 WL 3488152, at *4 (N.D. Ga. June 1, 2015) (citing Facebook post displaying gang hand signal in order denying motion to suppress).

Accordingly, Trimmier's  First Amendment retaliation claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

The Court enters the following orders:

(1)      The requests seeking compensatory and punitive damages from the defendants in their official capacities for violations of Trimmier's federal constitutional rights are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).  The request for declaratory relief; the First Amendment retaliation claim; the Fourteenth Amendment substantive due process claim that the defendants deprived Trimmier of basic human needs by subjecting him to conditions in the SRG phase program involving lack of access to the library, educational and vocational programs and cleaning supplies, limitations on visitation, telephone calls, commissary spending and recreational opportunities and ineligibility for good time credits, parole or supervisory release and community placements; and the Fourteenth Amendment substantive due process claim that Trimmier's involvement in a fight during which he incurred unspecified injuries constituted a serious risk of harm to his safety are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Fourteenth Amendment procedural due process claims related to Trimmier's redesignation as an SRG member and his placement in the SRG program in August 2019 will proceed against Lieutenant Randolph, SRG Program Director Papoosha and Director Santiago in their individual capacities and against SRG Program Director Papoosha and Director Santiago in their official capacities; the Fourteenth Amendment substantive due process claim related to the allegedly punitive conditions imposed during Trimmier's confinement in the SRG program in 2018 and upon his readmission in August 2019 will proceed against all defendants in their

19

individual capacities and against SRG Program Director Papoosha, Commissioner Cook, Director Santiago and Warden Martin in their official capacities; the Fourteenth Amendment substantive due process claim related to conditions that arising out of Trimmier's social isolation and lack of access to treatment for his mental health during his confinement in the SRG program in 2018 will proceed against all defendants in their individual capacities and against SRG Program Director Papoosha, Commissioner Cook, Director Santiago and Warden Martin in their official capacities; and claims asserted under Article First, §§ 4, 5, 8, 9 and 20 of the Connecticut Constitution will proceed against all defendants in their individual capacities and against SRG Program Director Papoosha, Commissioner Cook, Director Santiago and Warden Martin in their official capacities.

(2)     **On or before September 23, 2020**, the Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal's Service. The U.S. Marshals Service shall serve the summons, a copy of the complaint and amended complaint and this order on Security Risk Group Coordinator John Papoosha, Security Director Antonio Santiago, Warden Rollin Cook and Warden Robert Martin in their official capacities by delivering the necessary documents in person to the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141.

(3)     The Clerk shall verify the current work addresses of: Lieutenant John Randolph, Security Risk Group Coordinator John Papoosha, Security Director Antonio Santiago, Warden Rollin Cook and Warden Robert Martin and mail a copy of the complaint and amended complaint, this order, and a waiver of service of process request packet to each defendant in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of each request.  If any defendant fails to return the

20

waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)     Defendants Cook, Papoosha, Randolph, Santiago and Martin shall file their response to the amended complaint, either an answer or motion to dismiss, within thirty (30) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by March 2, 2021. Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed by April 2, 2021.

(7)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

(8)     The Clerk is directed to send a copy of the Complaint, [ECF No. 1], the Amended Complaint, [ECF No. 15], and a copy of this Order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 2rd day of September 2020.

_____/s/_____
Kari A. Dooley
United States District Judge

21